[Cite as *State v. Nelson-Vaughn*, 2016-Ohio-1426.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| ROBERT NELSON-VAUGHN | Case No. 2015 CA 00124 |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Alliance Municipal
                             Court, Case No.  2015 CRB 0353


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 31, 2016


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

MATTTHEW S. KUHN                          JEFFREY MAX HAUPT
ALLIANCE CITY PROSECUTOR                  950 South Sawburg Avenue
470 East Market Street                    Alliance, Ohio  44601
Alliance, Ohio  44601

*Wise, J.*

**{¶1}** Appellant Robert Nelson-Vaugh appeals his conviction and sentence on one count of Sexual Imposition entered in the Alliance Municipal Court following a jury trial.

**{¶2}** Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS</u>

**{¶3}** On the weekend of March 20-22, 2015, M.S., age 14, and P.H., age 15, visited with P.H.'s family at 141 Wayne Street Alliance, Ohio, where P.H.'s adult cousin Stephanie lived with several other people at a home owned by Stephanie's Grandmother. (T. at 89, 91-92, 95).

**{¶4}** One of the people that periodically lives at that residence is 26 year old Robert Nelson-Vaughn, who is also a first cousin of P.H. (T. at 90-91, 181). M.S. did not know Robert. (T. at 124).

**{¶5}** On the weekend in question, Robert was present at the home. Testimony showed that Robert tickled both of the girls repeatedly. (T. at 96-98). Throughout the weekend, Robert would not allow the girls to leave the house without first giving him a hug, and this was believed to have happened around 10 times. (T. at 98-99,109).

**{¶6}** The girls initially tolerated Robert's hugs in an effort to "get it over with and leave" the house. (T. at 99, 129). Robert also kissed M.S. on the cheek at some point in the weekend. (T. at 129). Robert was told multiple times to stop his behavior and M.S. constantly expressed her desire to not be touched or tickled. (T. at 100). M.S. believed she told Robert to stop between 6 and 12 times. (T. at 128-129).

{¶7} At some point, Robert touched M.S.'s buttocks. (T. at 101). She reported Robert's behavior to Robert's sister Stephanie in an effort to get him to stop. (T. at 101). When Stephanie confronted Robert, Robert responded that "this is my house, I'll do whatever the hell I want to do." (T. at 101). M.S. testified that Stephanie reported that information to her from Robert, and Stephanie told M.S. that she (Stephanie) cannot control Robert. (T. at 137).

{¶8} P.H. witnessed the tickling, hugging, and one touch on the buttocks of M.S. (T. at 103). P.H. also testified that Robert was told to stop multiple times to no avail, and that Robert kissed P.H.'s cheek and had to be told to stop. (T. at 103).

{¶9} M.S. witnessed Robert touching P.H.'s thigh and testified that Robert touched her (M.S.'s) buttocks. (T. at 130). The buttocks touch took place when Robert was physically picking the girls up and setting them down on the couch. (T. at 130). M.S. testified that her buttocks were touched by Robert near her thighs as well. *Id.* M.S. testified that this was a deliberate touch by Robert and that Robert also licked her face and ear and that her earring was torn from her ear in the process. (T. at 131). M.S. testified that when Robert licked her face it was from the bottom of her jaw through to her ear, and that she told Robert to get off her and she pushed him away and kicked at him. (T. at 131-132). According to M.S., the face lick was not simple rough-housing or horseplay. (T. at 136). M.S. testified that there were at least three hugs, one kiss, and one lick from Robert to M.S. (T. at 133).

{¶10} In addition, the tickling of the girls' legs and sides by Robert was constant throughout the weekend. (T. at 152). This behavior escalated to an event early Sunday morning where Robert approached P.H. on the couch and rubbed P.H.'s inner thigh and

asked if he could "finger" her. (T. at 104-105). P.H. understood Robert's question as a sexual reference to digital penetration. (T. at 104-106). M.S. testified that she heard Robert ask to "finger" P.H. and that she, too, understood that to be a sexual request. (T. at 133-134).

{¶11} The following day, the police were contacted after M.S. told her family about Robert's behavior. (T. at 107, 134-135). Officer Cook of the Alliance Police Department became involved in the investigation and had the opportunity to speak with Robert about the allegations made by the girls. (T. at 166-167). Another officer, Officer McCord also of the Alliance Police Department, assisted Officer Cook. (T. at 169-170). Officer Cook explained his credentials and experience as a police officer and explained that the investigation was related to the events that occurred at 141 West Wayne Street in the City of Alliance, Stark County, Ohio. (T. at 168). Officer Cook was wearing a police uniform and operating a police cruiser and had a point of view camera in use during the interview with Robert. (T. at 166, 169-170).

{¶12} On the video, Robert is seen and heard explaining that he did not do anything wrong and would be comfortable behaving in the same fashion even if M.S.'s father had been present. (T. at 171-175). Robert acknowledged touching the girls when he was picking them up and moving them. (T. at 176). Robert explained to the officer that he was basically messing around or playing with the girls. (T. at 175, 190).

{¶13} Robert made a gagging noise and is seen gagging when asked about whether he asked to "finger" his cousin P.H. *Id.* Robert replied that allegation/idea was gross but Officer Cook testified that his reaction was not convincing to the officer. *Id.*

Robert went on to explain that he "might of (have) done everything but I didn't say I had a gun or the finger thing." (T. at 177-178, 191,196).

{¶14} Robert did acknowledge that he licked his cousin P.H. and that he was told to stop his behavior multiple times. (T. at 178, 180). Robert eventually says that he would not behave in the same fashion if the father of either the girls were present. (T. at 180). Robert stated that he is 26 years old and is not married. (T. at 181).

{¶15} Robert also stated that other than tickling the girls and "moving" them physically, he may not remember some of his behavior. (T. at 181). He further stated that any touch on M.S.'s buttocks would have been accidental. (T. at 189-190, 191). Robert indicated that he was possibly doing a dance called 'twerking' that involves rubbing one's buttocks on others. (T. at 195).

{¶16} On March 23, 2015, Robert Nelson-Vaugh was arrested for two counts of Misdemeanor Sexual Imposition (M3): County One (P.H.) and Count Two (M.S.). Defendant was arraigned on the same day and entered pleas of 'Not Guilty' to both counts.

{¶17} On June 11, 2015, a jury trial was held in this matter. At trial, the jury heard testimony from P.H., M.S., and Officer Eric Cook. Appellant did not testify and presented no evidence.

{¶18} At the conclusion of the trial, Appellant was found not guilty of Count One (P.H.) and guilty of Count Two (M.S.). Appellant was sentenced to sixty (60) days of jail with credit for two jail days already served.

{¶19} Appellant now appeals, raising the following errors for review:

ASSIGNMENTS OF ERROR

{¶20} "I. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶21} "II. THE TRIAL COURT ERRED IN ALLOWING A POLICE OFFICER TO TESTIFY REGARDING APPELLANT'S CREDIBILITY.

{¶22} "III. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶23} For ease of discussion, we will address Appellant's Assignments of Error out of order.

II.

{¶24} In his Second Assignment of Error, Appellant argues that the trial court erred in allowing a police officer to testify as to the credibility of the Appellant. We disagree.

{¶25}  At the trial in this matter, the state asked Officer Cook the following:

{¶26} "Q:    Okay. At a certain point there did Mr. Nelson-Vaughn, did he sort of make a motion or a face as though he were gaging?

{¶27} "A:    Yes he did.

{¶28} "Q:    Do you know – what did that mean, or what was that in response to?

{¶29} "A:    Um, when we asked him specifically about his cousin [P.H.] if he had asked her specifically if he could finger her or digitally penetrate her with his fingers and his reaction was a, like a gag.

{¶30} "Q:    Okay.

**{¶31}** "A:    Yes, and he said that was gross.

**{¶32}** "Q:    What's that?

**{¶33}** "A:    I think he – I believe he said that was gross – that would be gross.

**{¶34}** "Q:    Did that – did that seem convincing to you?

**{¶35}** "A:    No. (T. at 154-155).

**{¶36}** Appellant did not properly preserve the error for appellate review by objecting to the officer's testimony. We therefore review admission of the comments that he now assigns as error under a plain error analysis.

**{¶37}** In criminal cases where an objection is not raised at the trial court level, "plain error" is governed by Crim.R. 52(B), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph two of the syllabus.

**{¶38}** "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus,* 560 U.S. 258, 262 130 S.Ct. 2159, 176 L.Ed.2d 1012(2010) (internal quotation marks and citations omitted).

**{¶39}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano,* 507 U.S. at 725,734, 113 S.Ct. 1770, 123

L.Ed.2d 508(1993); *State v. Perry,* 101 Ohio St.3d 118, 120 802 N.E.2d 643(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Perry, supra,* at 118, 802 N.E.2d at 646.

{¶40} Here, the officer's experience in determining if someone is being truthful gave him no more expertise than anyone else in a similar situation. All people make these determinations on a daily basis. Further, these considerations were before the jury. The officer's expertise was not of a nature hidden from lay understanding.

{¶41} Evid.R. 701 and 704 qualify the officer's testimony as lay opinion. Evid.R. 701 permits opinions and inferences by a lay witness rationally based on his perception and if helpful, to "a clear understanding of the testimony" of the witness or to "the determination of a fact in issue". And "an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact". Evid.R. 704.

{¶42} Further, the jury was the final arbiter in determining the credibility of Appellant's statements and gestures because the jury in this case was given the taped interview and able to view the video and hear the audio for themselves. They were therefore able to independently observe Appellant's behavior and judge his credibility.

{¶43} Based on the foregoing, we do not find plain error in this case.

{¶44} Appellant's second assignment of error is overruled.

**III.**

**{¶45}** In his third assignment of error, Appellant argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.

**{¶46}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows:

**{¶47}** An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

**{¶48}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶49}** Appellant herein was convicted under R.C. §2907.06(A)(1), which states in pertinent part: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard."

**{¶50}** In turn, R.C. §2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{¶51}** Furthermore, the definition of "recklessness" is defined in R.C. §2901.22(C), which states:

**{¶52}** "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

**{¶53}** At trial, M.S. testified that she was 14 years old; that Appellant grabbed her buttocks when he picked her up and put her on the couch; that he licked her ear, pulling out her earring and causing her ear to bleed.

**{¶54}** Based on the foregoing, we find that, after viewing the evidence in a light most favorable to the prosecution, such evidence, if believed, was adequate to prove that Appellant committed the crime of sexual imposition.

**{¶55}** We hold, therefore, that the state met its burden of production regarding each element of sexual imposition, and, accordingly, there was sufficient evidence to support Appellant's conviction.

**{¶56}** In his manifest weight of the evidence argument, Appellant argues M.S. was not a credible witness. He argues that at trial she testified that the licking incident occurred on Saturday night but in her statement to the police she claimed that it happened the night after Appellant asked to "finger" P.H., which both M.S. and P.H. claimed happened on Saturday night.

**{¶57}** Upon review of the record, we are not persuaded that the decisions of the jurors in assessing the evidence resulted in a manifest miscarriage of justice. The issue of credibility of M.S. is one to be resolved by the trier of fact. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260.

**{¶58}** Here, the jury, as the trier of fact, was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony,

but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992).

**{¶59}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Appellant of the charge.

**{¶60}** Based upon the foregoing and the entire record in this matter, we find Appellant's conviction is not against the sufficiency or the manifest weight of the evidence.

**{¶61}** Accordingly, Appellant's Third Assignment of Error is overruled.

## I.

**{¶62}** In his First Assignment of Error, Appellant argues that he was denied the effective assistance of counsel.

**{¶63}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

**{¶64}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶65}** Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694

**{¶66}** Here, Appellant argues that his trial counsel was ineffective for 1) failing to object to the admission of hearsay testimony; 2) allowing police officer to comment on the credibility of Appellant's statement; 3) failing to impeach the alleged victim with a taped, inconsistent statement; and 4) objecting to co-counsel's question.

*Hearsay*

**{¶67}** Appellant argues that his counsel should have objected to the hearsay statements of M.S. made by P.H.  Appellant fails to support this portion of his assignment of error with citations to the record where the statement he is challenging occurred. *See* App.R. 16(A)(7).

**{¶68}** Further, Appellant was acquitted of the charges involving P.H.  We therefore find that his counsel was not ineffective.

*Police Officer's Statements*

**{¶69}** Based on our disposition of Assignment of Error II, we do not find counsel was ineffective for failing to object to the officer's observations and impressions of Appellant's response and reaction to the questions posed to him.

*Inconsistent Statements by Victim*

**{¶70}** Appellant argues that counsel's failure to use the victim's prior inconsistent statement made to the detective as to the day and time of the alleged sexual imposition was error.

**{¶71}** It is well settled that the scope of cross-examination is considered a trial strategy, and debatable trial tactics do not establish ineffective assistance. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101, citing, *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 45; *State v. Campbell* (2000), 90 Ohio St.3d 320, 339, 738 N.E.2d 1178. In this case, defense counsel may have decided not to cross-examine because this may have re-emphasized the victim's testimony. Such considerations are trial strategy; and as such, do not constitute ineffective assistance of counsel.

**{¶72}** Further, we cannot say that the outcome of the trial clearly would have been different had Appellant's counsel used M.S.'s prior statement to the police to impeach her testimony.

*Objection to Co-counsel's Question*

**{¶73}** At trial, counsel for Appellant asked the following question of Officer Cooke on cross-examination:

**{¶74}** "Q:     Now, did they give you any indication at that point that Robert had done anything like this in the past to [P.H.] – inappropriate touching only?" (T. at 165).

**{¶75}** Appellant's co-counsel objected. Following a sidebar, counsel moved to strike his own question. Appellant argues that such objection by co-counsel suggests that Appellant's two attorneys were representing conflicting interest. *See Cuyler v. Sullivan* (1980), 446 U.S. 335, 350.

**{¶76}** Upon review, we disagree. We find that co-counsel's objection was likely made to prevent counsel from "opening the door" to any prior bad acts of Appellant.

**{¶77}** Based on same, we do not find the raising of such objection was ineffective assistance of counsel, but rather was likely just the opposite.

**{¶78}** Appellant's First Assignment of Error is overruled.

*Cumulative Effect*

**{¶79}** Although not separately assigned as error as required by App.R. 16, Appellant contends he was deprived of a fair trial based on the existence of cumulative error. We disagree.

**{¶80}** The doctrine of cumulative error provides that a conviction will be reversed where the cumulative effect of evidentiary errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not singularly constitute cause for reversal. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus.

**{¶81}** In support of his "cumulative error" argument, Appellant revisits the errors raised in his three separate assignments of error.

**{¶82}** Notwithstanding this Court's past reluctance to embrace cumulative error as grounds for reversal (*see State v. Mascarella,* 5th Tuscarawas No. 94 AP 100075, 1995 WL 495390 (July 6, 1995)), we have reviewed the pertinent parts of the record in this matter, and we do not  find reversible error has been demonstrated on this basis as urged by Appellant.

**{¶83}**  For the reasons stated in the foregoing opinion, the judgment of the Alliance Municipal Court, Stark County, Ohio, is affirmed.

By: Wise, J.

Baldwin, J., concurs.

Hoffman, P. J., concurs separately.

JWW/d 0322

*Hoffman, P.J., concurring*

{¶84} I concur in the majority's analysis and disposition of Appellant's first and third assignments of error.[1]   I further concur in the majority's decision to overrule Appellant's second assignment of error.

{¶85} I write separately only to clarify that to the extent the majority's analysis may be interpreted as finding Officer Cook's opinion was admissible, I would respectfully disagree.  However, I do agree such admission does not rise to the level of plain error.

---

[1] I find Appellant's claim of ineffective assistance of counsel for failing to object to Officer Cook's opinion as raised in his first assignment of error does not meet the second prong of *Strickland*.