[Cite as *In re L.D.*, 2018-Ohio-3380.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

    L.D.

JUDGES:
Hon. John W. Wise, P. J.
Hon. W. Scott Gwin, J.
Hon. Craig R. Baldwin, J.

Case No. 18 CA 0023

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. F2016-187 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 22, 2018 |

APPEARANCES:

For Appellee

WILLIAM C. HAYES
PROSECUTING ATTORNEY
JEFFREY BOUCHER
ASSISTANT PROSECUTOR
20 South Second Street, Fourth Floor
Newark, Ohio 43055

For Appellant Mother

M. SHAWN DINGUS
136 West Mound Street
Suite 100
Columbus, Ohio 43215

*Wise, P. J.*

{¶1} Appellant-Mother Stephanie D. appeals the decision of the Licking County Court of Common Pleas, Juvenile Division, which granted permanent custody of her minor child, L.D., to Appellee Licking County Job and Family Services ("LCJFS"). The relevant procedural facts leading to this appeal are as follows.

{¶2} Appellant is the mother of two minor children, L.D., born in 2014, and K.D., born in 2012.[1] Appellant is married to Jamie D., the father of the two children. Both children were removed from appellant's home in March 2016 upon a report received by the agency that the parents had tested positive for methamphetamine. The concerns at that time included parental substance abuse and unemployment, potential loss of housing, and previous domestic violence incidents allegedly witnessed by the children.

{¶3} On March 23, 2016, LCJFS filed a complaint alleging dependency in the Licking County Court of Common Pleas, Juvenile Division. On June 15, 2016, appellant and Jamie D. appeared in court and stipulated to a dependency finding.

{¶4} A dispositional hearing took place on August 19, 2016. A juvenile court magistrate issued a decision on September 19, 2016, recommending the maintaining of temporary custody with the agency. Both parents filed objections, but the trial court overruled same and adopted the magistrate's decision via a judgment entry issued on March 24, 2017.

---

[1] The sibling's case, as to appellant-mother, is being addressed under a separate appellate case number. In addition, the father, Jamie D., has filed his own appeal.

**{¶5}** In the meantime, prior to the court's ruling on the aforesaid objections, the agency filed a motion for permanent custody on February 17, 2017. The matter was heard by a magistrate on August 28, 2017, October 18, 2017, and October 20, 2017.

**{¶6}** After taking the matter under advisement, the magistrate issued a decision on January 25, 2018, recommending a grant of permanent custody of K.D. and L.D. to LCJFS.

**{¶7}** On February 8, 2018, appellant-mother filed objections to the magistrate's decision regarding permanent custody.

**{¶8}** On February 12, 2018, Jamie D. also filed objections to the magistrate's decision.

**{¶9}** The trial court overruled appellant-mother's objections and approved the decision of the magistrate on February 14, 2018.

**{¶10}** The trial court, in a separate judgment entry, also denied the objections of the father, Jamie D., on February 14, 2018.

**{¶11}** On March 15, 2018, appellant filed a notice of appeal concerning the former entry. She herein raises the following five Assignments of Error:

**{¶12}** "I. THE TRIAL COURT ERRED WHEN IT DENIED MOTHER'S REQUEST FOR A TRANSCRIPT AND SUMMARILY OVERRULED MOTHER'S OBJECTIONS TO THE MAGISTRATE'S DECISION WITHOUT REVIEWING A TRANSCRIPT OF THE PERMANENT CUSTODY PROCEEDINGS.

**{¶13}** "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED MOTHER'S MOTION FOR LEAVE TO SUPPLEMENT HER PRELIMINARY

OBJECTIONS UPON RECEIPT OF THE TRANSCRIPT OF THE PERMANENT CUSTODY PROCEEDINGS.

{¶14} "III.    THE TRIAL COURT ERRED WHEN IT FOUND THAT R.C. 2151.414(B)(1)(d) IS APPLICABLE TO THIS CASE.

{¶15} "IV.    THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY SHOULD BE GRANTED TO THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} "V.    THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT MOTHER'S REQUEST FOR AN EXTENSION OF TEMPORARY CUSTODY.

{¶17} "VI.    MOTHER'S TRIAL COUNSEL WAS INEFFECTIVE IN HIS REPRESENTATION OF HER IN THE PERMANENT CUSTODY ACTION."

I.

{¶18} In her First Assignment of Error, appellant-mother contends the trial court committed reversible error in overruling her objection to the magistrate's decision without awaiting and reviewing a transcript of the permanent custody proceedings. We disagree.

{¶19} Juv.R. 40(D)(3)(b)(iii) states in pertinent part that "[a]n objection to a *factual finding*, whether or not specifically designated as a finding of fact under Juv.R. 40(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. ***." (Emphasis added). Furthermore, as we have frequently noted, objections to a magistrate's decision must be specific. *See, e.g.*, *In re M.H.*, 5th Dist. Fairfield No. 2016 CA 43, 2017-Ohio-1110, ¶ 24, citing *North v. Murphy,* 5th Dist. Tuscarawas No. 2000AP050044, 2001 WL 246419.

**{¶20}** A review of the record in the case *sub judice* reveals the magistrate issued a seven-page decision, with thirteen paragraphs of factual findings, concluding with a recommendation of permanent custody of K.D. and L.D. to the agency. Despite this attention to detail by the magistrate, appellant's objection merely states in pertinent part as follows, with no specific factual findings mentioned:

> Now comes [Stephanie D.], Mother of the above named children, by and through counsel, and respectfully moves this Honor [*sic*] Court, pursuant to Juv.R. 40, to reject the decision of the magistrate placing the children into the permanent custody of the Licking County Department of Job and Family Services filed January 25, 2018. It is the position of [Stephanie D.] that an extension of temporary custody was in the best interest of the minor children based on mother's case-plan progress.

**{¶21}** Objections to Magistrate's Decision, February 7, 2018, at 1.

**{¶22}** The aforesaid objection ended with a statement that appellant's counsel had filed a request for a transcript and a request for an extension of time to file "the final objection," and that counsel "intend[ed] to provide the [trial] court with a detailed memorandum in support of the objections after receipt of the transcripts." *Id.*

**{¶23}** Certainly, Juv.R. 40(D)(3)(b)(iii) additionally states that "[i]f a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections." Because this portion of the rule utilizes "leave of court" language, allowance of supplementation would be at the trial court's discretion. *See Matter of Estate of Holbrook*, 5th Dist. Tuscarawas No. 2016 AP 10 0051,

2017-Ohio-4429, ¶ 32, citing *Riley v. City of Cincinnati*, 1st Dist. Hamilton No. C–73435, 1974 WL 184559.

**{¶24}** The Staff Note to Juv.R. 40 states that "[t]he last sentence of Juv.R. 40(d)(3)(b)(iii) allows an objecting party to seek leave of court to supplement *previously filed objections* where the additional objections become apparent after a transcript has been prepared." Juv.R. Staff Note (July 1, 2006 Amendment). Thus, while it would not be unusual for an attorney representing an objecting party to bulk up his or her objections under Civ.R. 53 or Juv.R. 40 after an opportunity to read and review a trial transcript, we are unable in this instance to conclude the trial court abused its discretion in denying appellant an opportunity to do so, given the paucity of her original objection, even though the rule ordinarily allows thirty days to obtain a transcript. Our decision in *In re Wheeler*, 5th Dist. Muskingum No. CT 2004-0037, 2005-Ohio-220, is distinguishable, as in that case the appellant had provided specific objections to factual findings by the magistrate, as per Juv.R. 40(D)(3)(b)(iii). *Wheeler* at ¶¶ 18-22.

**{¶25}** The trial court, in the judgment entry under appeal, denied the objection filed by appellant, and, having reviewed the audio record and exhibits, approved and adopted the magistrate's decision recommending permanent custody to the agency of both children. Upon review, we find no basis to reverse the trial court's decision in the judgment entry under appeal to deny appellant's objections under Juv.R. 40.

**{¶26}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶27}** In her Second Assignment of Error, appellant contends the trial court abused its discretion when it denied mother's motion for leave to supplement her

preliminary objections upon receipt of the transcript of the permanent custody proceedings.[2]

**{¶28}** We find this argument has been implicitly addressed and resolved in our discussion of the First Assignment of Error above. Accordingly, we find the trial court acted within its discretion in denying appellant leave to supplement under Juv.R. 40.

**{¶29}** Appellant's Second Assignment of Error is therefore overruled.

IV.

**{¶30}** In her Fourth Assignment of Error, which we will address out of sequence, appellant argues that the trial court's granting of permanent custody of L.D. to the agency was against the manifest weight of the evidence. We disagree.

**{¶31}** As an appellate court, we are not the trier of fact; instead, our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA5758, 1982 WL 2911. It is well-established that the trial court in a bench trial is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. Summit No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Furthermore, the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *See State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096.

---

[2] The trial court did, however, indicate it would grant a request for the transcript, but only for purposes of an appeal to this Court.

### *R.C. 2151.414(B)(1) Requirements*

**{¶32}** R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, *** and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court * * *.

**{¶33}** In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (*see* R.C. 2151.414(B)(1)(a), *supra*), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." *See* R.C. 2151.414(E)(1). Thus, R.C. 2151.414(E) sets forth a list of sixteen predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. *In re Calvert Children*, 5th Dist. Guernsey Nos. 05–CA–19, 05–CA–20, 2005–Ohio–5653, ¶ 41.

**{¶34}** We have recognized that even where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *See, e.g., In re Pendziwiatr/Hannah Children,* Tuscarawas App.No. 2007 AP 03 0025, 2007–Ohio–3802, ¶ 27.

**{¶35}** We note Civ.R. 53(D)(3)(b)(iv) and Juv.R. 40(D)(3)(b)(iv) both state that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion *** unless the party has objected to that finding or conclusion as required ***." Furthermore, as we emphasized *supra*, objections to a magistrate's decision must be specific. *See North v. Murphy,* 5th Dist. Tuscarawas No. 2000AP050044, 2001 WL 246419. Nonetheless, we have also recognized that an appellant's failure to specifically object to a magistrate's decision does not bar appellate review of "plain error." *See, e.g., Tormaschy v. Weiss*, 5th Dist. Richland No. 00 CA 01, 2000 WL 968685. To constitute plain error in a civil case, the error must be "obvious and prejudicial" and "if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." *Friedland v. Djukic*, 191 Ohio App.3d 278, 2010–Ohio–5777, ¶ 37 (8th Dist.).

**{¶36}** As indicated previously, appellant's objection challenged "best interests" only. We will therefore herein proceed under a plain error standard of review as to the R.C. 2151.414(B)(1) issue.

**{¶37}** In the case *sub judice*, the magistrate heard testimony from nine witnesses, plus appellant and Stephanie D. We note LCJFS ongoing caseworker Kelsey Weisenstein testified that she had been assigned in the spring of 2016, and that she was working on the case on a team basis with social worker Dom Barlow. Tr. at 250. Weisenstein recalled that the original agency concerns included substance abuse, mental health issues, parenting problems, safe housing, stable employment, and relationship issues between mother and father. Tr. at 215. She and Barlow described the case plan facets as having the parents pursue drug/alcohol and mental health

assessments and counseling, complete a parenting class, maintain employment and safe and stable housing, and address their relationship issues.

{¶38} Appellant first maintains that the trial court's conclusion that she had made "minimal, if any, progress" was an exaggerated finding that is not supported by the record. She urges that she had been seeing a licensed counselor for her mental health and/or substance abuse issues, and had been attending Narcotics Anonymous meetings at the suggestion of her counselor. Appellant had also made initial contact with two inpatient programs, Courage House and Shepherd Hill, as a means of addressing her relapse issues. Appellant also points out she tried to schedule parenting classes, but she maintains that LCJFS would only allow enrollment upon her demonstrating sobriety for a ninety-day period; thus, she never attained admission to the program. Appellant also challenges the court's conclusions as to her lack of housing and employment during the case.

{¶39} Appellant thus does not presently deny that despite her attempts at successful treatment, she continued to have relapses and methamphetamine-positive tests or self-reports throughout the agency's involvement. Appellant also does not deny that she missed approximately twenty mental health appointments, although she attributes this to transportation problems or scheduling conflicts. Furthermore, while she was not unemployed throughout the case plan – she worked with her husband doing lawn care in the summer of 2017 and was working at a Duke and Duchess convenience store at the time of the final hearing, for example – the record at least indicates a lack of stability in that realm. Also, while appellant was able to maintain housing for herself and her husband, the court appeared concerned by the lack of adequate housing for the

potential return of the children; in any case, by the time of the final hearing, appellant was reporting being in fear of her husband, who by then was living separate and apart in Zanesville, Ohio, and she had become homeless because her mother would not tolerate her meth use.

**{¶40}** Plain error analysis is limited and is to be applied with the utmost caution. *State v. Tart*, 8th Dist. Cuyahoga No. 76223, 2000 WL 739518. Under our present limited analysis of the question of the R.C. 2151.414(B)(1) requirements, brought about by the lack of sufficiently detailed objections as per the Juvenile Rules, we are not persuaded upon review that the trial court committed plain error by applying R.C. 2151.414(E)(1) and (E)(16) and implicitly determining that K.D. and L.D., despite appellant's partial compliance with the case plan, could not be placed with appellant or Jamie D. within a reasonable time or should not be placed with appellant or Jamie D. *See* R.C. 2151.414(B)(1)(a).

### *R.C. 2151.414(D)(1) Best Interest Consideration*

**{¶41}** Finally, in determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D)(1) and "all relevant factors." The specified factors are as follows:

> (a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

> (b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶42} In the case *sub judice*, LCJFS does not dispute that the parents were generally consistent in their biweekly supervised visitations at the agency. Appellee's Brief at 24. *See* R.C. 2151.414(D)(1)(a). The magistrate's decision nonetheless concluded, without detailed reference to appellant, that Jamie D. was often late, or would leave the visit early. Decision at 4. According to Weisenstein, the aforementioned agency ongoing caseworker, Jamie D. was also telling the children not to "behave for [their] caregivers." Tr. at 257. Appellant's present focus seems to be on the fact that visitation was never increased outside of a biweekly supervised setting, although there was testimony that the agency pursued a policy in this case that any increases in visitation

and/or modifications to the restrictiveness of the visitation setting were to be contingent upon the overall progress on case plan services. Furthermore, in regard to the issue of the children's relationship with their caregivers, Weisenstein testified that she had observed K.D. and L.D. in the current foster home every month and that they were doing very well in that placement. Tr. at 277.

{¶43} In regard to the wishes of the children (R.C. 2151.414(D)(2)(a)), the evidence tended to be oriented toward K.D., as she is the older of the two. The guardian ad litem reported that K.D. had expressed a desire to stay with the foster parents "forever." In addition, evidence was presented from K.D.'s current and former therapists, who both testified that K.D. would display aggressive behaviors following parent visits. Lauren Gackstetter, LPC, K.D's current counselor, additionally noted that on more than one occasion, K.D. reported that she did not want to go back with her parents and that she wanted to stay with her foster parents. Tr. at 318.

{¶44} In this instance, for purposes of R.C. 2151.414(D)(1)(c), K.D. and L.D. had been in agency custody and foster care placement for nineteen months at the time of the October 2017 permanent custody hearing, although this was shy of the "12 of 22" rule of R.C. 2151.414(B)(1)(d), based on the February 2017 filing date of the permanent custody motion. *See* Assignment of Error II, *supra*. Even so, we find the time frame factor proper for consideration of the best interests of the children at issue. Caseworker Weisenstein testified that K.D. and L.D. were placed in a therapeutic foster home and had been in that placement for six months at the time of the final hearing. Tr. at 276. Weisenstein testified that the previous foster placement was changed after K.D. became aggressive with another child in that home. *Id.*

**{¶45}** The situation of the parents had presented new hurdles late in the timeframe before the permanent custody hearings. R.C. 2151.414(D)(1)(d). As of October 2017, the parents had become separated, and appellant had relapsed and become homeless after being asked to leave the residence of her own mother. LCJFS also called a Licking County Sheriff's Deputy, who testified appellant reported in October 2017 that she had received a threatening phone call from a man she had recently slept with and bought drugs from. Tr. at 340. In addition, it appears undisputed that no viable relative placements or legal custody options were available.

**{¶46}** It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424. In the case *sub judice*, upon review of the record and the findings and conclusions therein, we conclude the trial court's judgment granting permanent custody of L.D. to the agency was made in the consideration of the child's best interest and did not constitute an error or an abuse of discretion under the circumstances presented.

**{¶47}** Appellant's Fourth Assignment of Error is overruled.

III.

**{¶48}** In her Third Assignment of Error, appellant argues that the trial court erred in applying R.C. 2151.414(B)(1)(d) to this case.

**{¶49}** R.C. 2151.414(B)(1)(d) provides as a basis for advancing a permanent custody case is that "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ***." This provision is sometimes termed the "twelve of twenty-two" rule. *See, e.g.*, *In re J.I.*, 12th Dist. Preble No. CA2005–05–008, 2005–Ohio–4920, ¶ 8.

**{¶50}** R.C. 2151.414(B)(1) additionally mandates: "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

**{¶51}** Appellant herein is technically correct that twelve months had not elapsed at the time of the permanent custody motion's filing for purposes of invoking the "12 of 22" rule in the case *sub judice. See In re C.W.,* 104 Ohio St.3d 163, 167, 2004-Ohio-6411, 818 N.E.2d 1176. However, it is well-established that an appellant, in order to secure reversal of a judgment, must show that a recited error was prejudicial to her. *See Tate v. Tate,* 5th Dist. Richland No. 02-CA-86, 2004-Ohio-22, ¶ 15, citing *Ames v. All American Truck & Trailer Service* (Feb. 8, 1991), Lucas App. No. L-89-295, quoting *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 110, 233 N.E.2d 137. We have recognized that R.C. 2151.414(B)(1)(a) and (B)(1)(d) are independently sufficient to use as a basis to grant an agency's motion for permanent custody. *See Matter of P.K.*, 5th Dist. Stark No. 2017 CA 00196, 2018-Ohio-400, ¶ 16, citing *In re M.R.,* 3d Dist. Defiance No. 4–12–18, 2013–Ohio–1302, ¶ 80.

**{¶52}** In the instant case, as indicated previously, the trial court additionally implicitly relied upon R.C. 2151.414(B)(1)(a), and correspondingly, R.C. 2151.414(E)(1) and (E)(16), in reaching its decision. We therefore find no showing of prejudicial error under these circumstances.

**{¶53}** Appellant's Third Assignment of Error is overruled.

V.

**{¶54}** In her Fifth Assignment of Error, appellant argues the trial court erred when it refused to grant her request for an extension of temporary custody. We disagree.

**{¶55}** A request by a parent for an extension of temporary custody in the situation *sub judice* is, in practical effect, a request to postpone or continue the pending permanent custody proceeding. We have frequently recognized that the grant or denial of a continuance rests in the trial court's sound discretion. *See, e.g., Matter of R.M., Jr.*, 5th Dist. Muskingum No. CT2017-0057, 2018-Ohio-395, ¶ 22, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus.

**{¶56}** The Ohio Supreme Court has recognized that R.C. 2151.415(D) permits an agency to seek two extensions of a temporary custody order, up to six months each. *In re Adams,* 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886. However, no more than two extensions of a temporary custody order may be given. *Id.*, citing R.C. 2151.415(D). The Court further explained: "Prior to the end of the second extension of the temporary custody order, the agency must file a motion with the court requesting the court to make a dispositional order. * * *" *See, also, In re Murray,* 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990).

**{¶57}** Upon review, and based on our earlier analysis, we find no demonstration that the court acted in an unreasonable, unconscionable, or arbitrary manner in denying appellant's motion to extend temporary custody.

**{¶58}** Appellant's Fifth Assignment of Error is overruled.

VI.

**{¶59}** In her Sixth Assignment of Error, appellant argues that she was denied effective assistance of counsel in the permanent custody proceeding. We disagree.

**{¶60}** We have recognized "ineffective assistance" claims in permanent custody appeals. *See, e.g., In re Utt Children,* 5th Dist. Stark No. 2003CA00196, 2003–Ohio–4576. Where the proceeding contemplates the loss of parents' "essential" and "basic" civil rights to raise their children, "* * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." *In re Wingo,* 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), quoting *In re Heston,* 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998). Our standard of review for an ineffective assistance claim is thus set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *In re Fell,* 5th Dist. Guernsey No. 05 CA 8, 2005–Ohio–5790, ¶ 11.

**{¶61}** The standard of review for ineffective assistance claims under *Strickland*, *supra*, is also the standard in Ohio pursuant to *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; *i.e.*, whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential

duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* However, "[t]here are countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

**{¶62}** But even if an appellant initially shows that counsel was ineffective, he or she must then satisfy the second prong of the *Strickland* test. In other words, it is well-established that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *State v. Bradley* at 143, quoting *Strickland* at 697.

**{¶63}** Accordingly, we will herein direct our attention to the second prong of the *Strickland* test. *See In re Huffman,* 5th Dist. Stark No. 2005–CA–00107, 2005–Ohio–4725, ¶ 22.

**{¶64}** Appellant first urges that her trial counsel was ineffective for not providing more specific initial objections on February 8, 2017. *See* Assignment of Error I, *supra.* In our redress of the present appeal to this point, we have analyzed on a plain error basis appellant's general contentions as to the grant of permanent custody in light of R.C. 2151.414(B)(1), and we have fully analyzed the issue of best interests under 2151.414(D)(1). Having had the opportunity to consider the record on appeal for those purposes, we are unable to conclude that the trial judge's rulings on the Juv.R. 40

objections would have gone the other way but for the nature of appellant's trial counsel's objection format.

**{¶65}** Appellant secondly faults her trial counsel for failing to (1) call the guardian ad litem as a witness, (2) question L.D.'s adult sister about appellant's parenting and the dynamics of the family, (3) object to alleged hearsay by Ms. Weisenstein, (4) adequately question several of the agency's witnesses and Jamie D., and (5) admit exhibits to corroborate appellant's testimony. We have emphasized, in the criminal law context, that complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. *State v. Schuttinger*, 5th Dist. Licking No. 13 CA 83, 2014-Ohio-3455, ¶ 57, quoting *State v. Phillips,* 5th Dist. Stark No. 2010CA00338, 2011–Ohio–6569, ¶ 26, quoting *Buckelew v. United States* (5th Cir.1978), 575 F.2d 515, 521. This caveat is equally applicable in the context of challenges to a trial attorney's representation in permanent custody matters. Furthermore, an attorney may have to strategically curtail or avoid cross-examination because it may re-emphasize damaging testimony. *See State v. Nelson-Vaughn*, 5th Dist. Stark No. 2015 CA 00124, 2016-Ohio-1426, ¶ 71. Upon review, we find no demonstration of prejudice regarding appellant's trial counsel on the issues of presenting evidence and cross-examination.

**{¶66}** Appellant's Sixth Assignment of Error is therefore overruled.

**{¶67}** For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Juvenile Division, Licking County, Ohio, is hereby affirmed.

By: Wise, P. J.

Gwin, J., and

Baldwin, J., concur.

JWW/d 0807