OPINION *Page 2 
{¶ 1} Appellant Amy Pendziwiatr appeals the March 2, 2007 judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, terminating Appellant's parental rights and granting permanent custody to Appellee Tuscarawas County of Job and Family Services.
 {¶ 2} Hope Pendziwiatr (DOB 6-9-93), Charity Hannah (DOB 10-15-98), Kevin Hannah (DOB 10-29-00), Raheem Hannah (DOB 10-29-00) and Faith Hannah (DOB 12-25-01) are the children of Appellant. Freddie Hannah is the father of the youngest four children.[1] Anthony Blackshear was initially identified as the putative father of Hope.
 {¶ 3} On November 5, 2004, the trial court held a hearing pursuant to Juv.R. 6 and removed the children from Appellant's custody to be placed in Appellee's temporary custody. Appellee filed a complaint on November 8, 2006 alleging the children to be neglected and dependent. Appellee amended the complaint to add Anthony Blackshear as the putative father of Hope. Freddie Hannah did not participate in the proceedings at that time as he was incarcerated for drug and property theft crimes.
 {¶ 4} On January 5, 2005, the trial court held an adjudicatory hearing. At the hearing, Appellant agreed to stipulate to a finding of dependency if Appellee dismissed the allegations of neglect. The trial court granted Appellee's motion to dismiss the neglect allegations and accepted Appellant's admission of dependency. Appellant accepted the terms of the case plan which had the ultimate goal of reunification of her children into her home. *Page 3 
 {¶ 5} Appellant progressed with her case plan and the visitations with her children progressed. Appellant's first unsupervised, overnight visitation with her children was scheduled for July 29, 2005. During that visit, however, Appellant allowed Freddie Hannah to have contact with the children without approval of the trial court or Appellee. Freddie Hannah was released from prison in June 2005. Based on this incident, on August 15, 2005 Appellee filed a notice with the trial court notifying it that visitation with Appellant and her children was terminated.
 {¶ 6} In August 2005, Freddie Hannah contacted Appellee to be added to the case plan. On October 19, 2005, Appellee filed a Motion for Permanent Custody. The trial court held an initial hearing on the motion on December 17, 2005. Freddie Hannah appeared at the hearing and was officially added to the case plan. At the time of the initial hearing, Appellee completed a home study on the home of Dr. and Mrs. Dutcher.
 {¶ 7} Based on the favorable home study of the Dutchers, Appellee moved to dismiss their request for permanent custody and instead requested an extension to place the children with the Dutchers. The trial court held a hearing on March 15, 2006 and granted Appellee's motion for extension. The court placed the children in the temporary custody of the Dutchers over the Guardian ad Litem's objection. Appellant consented to the placement as the goal of the parties was the reunification of Appellant and her children.
 {¶ 8} On June 27, 2006, Appellee moved the court for a Review Hearing of the placement, based on issues that arose between Appellee and the Dutchers. The Dutchers had consented to a medical procedure for one of the children without advising Appellee, Appellant or the court. The Dutchers were also not aiding in the reunification *Page 4 
of Appellant with her children. On August 7, 2006, the children were placed back in the temporary custody of Appellee after a shelter care hearing.
 {¶ 9} On August 8, 2006, Appellee filed an agreed judgment entry authorizing supervised in-home visitation between Appellant and her children. The visits were moved from Appellee's visitation room to Appellant's home to see if the visits go more smoothly. The court also added Freddie Hannah to the visitation order.
 {¶ 10} On September 12, 2006, Appellee moved for permanent custody as the case had reached its statutory sunset date. Before the evidentiary hearing scheduled for March 1, 2007, the parties continued to work for reunification of the children and their parents. Visitation between the parents and children was terminated, however, when one child recounted a past incident of sexual abuse alleged to have been perpetrated by Freddie Hannah. While the child recanted the allegations, visitation was not reinstated.
 {¶ 11} The trial court issued its decision on March 1, 2007 granting Appellee's motion, finding the children had been in the temporary custody of Appellee for 12 of the previous 22 months and the disposition was in the children's best interests. It is from this decision Appellant now appeals.
 {¶ 12} Appellant raises one Assignment of Error:
 {¶ 13} "THE TRIAL COURT ERRED IN FINDING CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE PENDZIWIATR/HANNAH CHILDREN TO BE PLACED IN THE PERMANENT CUSTODY OF JOBS AND FAMILY SERVICES." *Page 5 
 {¶ 14} Appellant claims the trial court erred in granting permanent custody of her children to Appellee. We disagree.
 {¶ 15} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 16} Revised Code 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 17} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for *Page 6 
twelve or more months of a consecutive 22-month period ending on or after March 18, 1999.
 {¶ 18} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 19} In the case sub judice, the trial court found that two of the four circumstances delineated in R.C. 2151.414(B)(1) were found by clear and convincing evidence. First, the trial court found the Pendziwiatr/Hannah children have been in Appellee's custody for 12 or more months in a consecutive 22-month period under division (d) of the statute. Appellant did not appeal this finding. Pursuant to R.C.2151.414(B)(1), this conclusive finding, coupled with a showing by clear and convincing evidence that permanent custody is in the best interest of the children, provides a sufficient basis for this Court to affirm the trial court.
 {¶ 20} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. *Page 7 
 {¶ 21} In its judgment entry, the trial court found that factor R.C.2151.414(E)(1) existed with respect to Appellant. R.C. 2151.414(E)(1) states:
 {¶ 22} "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 23} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 24} Upon review of the record, we find the trial court did not err in finding by clear and convincing evidence that the Pendziwiatr/Hannah children should be placed in the permanent custody of Appellee. *Page 8 
 {¶ 25} Case manager Gabrielle Weingarth testified Appellee has been involved with the Pendziwiatr/ Hannah children since 1994. (Tr. 89). The Guardian ad Litem's report submitted on February 8, 2007 reflects Appellee's history with Appellant, including repeated reports of filthy living conditions, physical abuse of the children, exposure of the children to dangerous and inappropriate men and the older children taking on inappropriate responsibilities for their home and younger siblings. (GAL Report, February 8, 2007, 1-2).
 {¶ 26} At Appellant's first unsupervised overnight visit with her children, she permitted Freddie Hannah to have contact with the children. (Tr. 76). Earlier, Appellant expressed fear of Freddie Hannah to Ms. Weingarth. (Tr. 76). Appellant stated that she would receive threatening letters from Freddie Hannah while he was in jail stating that he was going to harm her and the children. (Tr. 76). Ms. Weingarth further testified that Appellant was "concerned about having overnights with the children because she was afraid Freddie Hannah would come and take the children or hurt her or the children." (Tr. 76-77).
 {¶ 27} While Appellant participated in her case plan and completed the plan requirements, albeit not all of her individual counseling, there is evidence that Appellant did not gain sufficient parenting skills to maintain five children with recorded behavioral issues. Family Service Aide Wendy Azzardi testified the supervised visits between Appellant and her children were chaotic. (Tr. 5). Appellant struggled with managing all the childrens' behaviors during her visits. (Tr. 6). To give Appellant guidance during some of the visits, Ms. Azzardi mapped out every minute of the visit on a chart on the wall. (Tr. 52). Ms. Azzardi testified that she noticed that when Appellant got frustrated *Page 9 
with the children, she became more physical with them, such as yanking and pulling their arms or picking them up and harshly putting them on the sofa or chair. (Tr. 53). Ms. Azzardi moved the visits to Appellant's home to determine if the visits would go more smoothly. (Tr. 8).
 {¶ 28} The visits between the children and Appellant did improve when they were moved to Appellant's home. However, when Freddie Hannah began participating in the visits, Appellant began to disregard her parenting responsibilities and relied upon him. (Tr. 117; GAL Report, 5 6). Freddie Hannah demonstrated controlling and domineering behaviors towards the children, Appellant and Appellee's staff. (Tr. 17-19; 77-78).
 {¶ 29} Ms. Weingarth testified the older four children have expressed a desire to not be returned to Appellant's home. (Tr. 81). Ms. Weingarth stated that only Faith, the five-year-old, has consistently stated that she wanted to return to Appellant's home, but because she wanted to go to the Head Start program with her brothers and sisters. (Tr. 81). At this time, Faith's foster parents have been working with Faith and providing her with equivalent teaching in the home. (Tr. 80).
 {¶ 30} The Guardian ad Litem recommended permanent custody. (GAL Report, 7).
 {¶ 31} As noted by the trial court, trial testimony and the Guardian ad Litem's report, Appellant has met her case plan requirements. (Tr. 89-90; Judgment Entry filed March 2, 2007; GAL Report, 3-4). And her parenting skills have improved since Freddie Hannah's involvement with the family. (Tr. 117). But as the testimony revealed, Appellant's improvement in parenting may be due to Freddie Hannah's controlling *Page 10 
nature towards her and the children. Before Freddie Hannah's release from prison, Appellant feared for her safety and her children's safety. Now Appellant has reunited with Freddie Hannah and is appearing to concede to his control in regards to the children. Further, the children have expressed a desire to not be placed in this situation again.
 {¶ 32} Upon review, we find sufficient, competent and credible evidence in the record to support the trial court's finding by clear and convincing evidence, and find the trial court did not err in determining the best interests of the child was best served by terminating the parental rights and granting permanent custody to Appellee.
 {¶ 33} The sole Assignment of Error is denied.
Delaney, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.
[1] Freddie Hannah also filed an appeal of the trial court's March 2, 2007 decision under Case No. 2007 AP 03 0016. *Page 1