[Cite as *In re B.M.*, 2018-Ohio-3780.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| B. M. (DOB 10/15/2016) | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| A Minor Child | : | |
| | : | |
| | : | Case No. 2018CA00053 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Court of Common
Pleas, Juvenile Division, Case No.
2016JCV00928

JUDGMENT: Affirmed

DATE OF JUDGMENT: September 19, 2018

APPEARANCES:

For Appellant-Mother                    For Appellee- Stark County DJFS

MARY G. WARLOP                          JAMES PHILLIPS
116 Cleveland Avenue N. W.              Stark County DJFS
Suite 500                               110 Central Plaza South
Canton, OH  44702                       Suite 400
                                        Canton, OH  44702

*Wise, Earle, J.*

{¶ 1}   Appellant-Mother D.U. appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her son, B.M., to Appellee Stark County Job and Family Services ("SCJFS").

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellant is the mother of B.M, born October 15, 2016. J.M is B.M's legal father, having signed B.M's birth certificate. As this case progressed, A.B was alleged to be B.M's biological father.

{¶ 3}   On October 18, 2016, SCJFS filed a complaint alleging dependency and or neglect of B.M. An emergency shelter care hearing was held on October 20, 2016 after which the trial court found probable cause for SCJFS involvement and that SCJFS had made reasonable efforts to prevent the need to remove B.M from appellant's custody. The trial court awarded emergency temporary custody of B.M to SCJFS and reaffirmed pre-adjudicatory orders for appellant to engage in various services.

{¶ 4}   At a hearing on November 9, 2016, the trial court found B.M dependent, awarded temporary custody to the SCJFS. The trial court further approved and adopted appellant's case plan, which required her to complete a parenting evaluation at Northeast Ohio Behavioral Health and follow any recommendations.

{¶ 5}   Appellant completed the parenting evaluation which recommended she attend Goodwill Parenting classes, receive comprehensive mental health treatment including medication and counseling, and to secure safe, independent housing.

{¶ 6}   The trial court reviewed the matter on April 11, 2017 and approved and adopted the case plan review packet, found compelling reasons existed to preclude filing

for permanent custody, found SCJFS had made reasonable efforts to finalize the permanency planning in effect, and maintained the status quo.

{¶ 7} On August 29, 2017, however, SCJFS filed a motion seeking permanent custody of B.M. The agency alleged that B.M could not be placed with appellant within a reasonable amount of time as appellant had demonstrated a lack of commitment toward B.M, and that permanent custody was in B.M.'s best interest. Trial was set for November 9, 2017.

{¶ 8} On September 15, 2017, the trial court again reviewed the matter. The court found no compelling reason existed to preclude the filing for permanent custody, and that SCJFS had made reasonable efforts to finalize the permanency planning in effect.

{¶ 9} On November 8, 2017, appellant filed a motion seeking to extend temporary custody of B.M to SCJFS and further, named A.B as a new possible biological father for B.M. This revelation required the continuance of the permanent custody trial until A.B could be served.

{¶ 10} On November 28, 2017, SCJFS filed an amended motion for permanent custody naming A.B as a possible father. The trial was continued until March 13, 2018. An attempt was made to determine if A.B was B.M's father, however, A.B failed to cooperate with paternity testing.

{¶ 11} On March 13, 2018, the trial court heard evidence on SCJFS's motion for permanent custody, and on March 28, 2018, the trial court heard evidence regarding best interests of B.M.

{¶ 12} SCJFS presented evidence regarding B.M and appellant. According to Dr. Aimee Thomas, who completed appellant's parenting evaluation, appellant's I.Q is 57.

This translates to appellant functioning verbally at the level of a 12 year-old, and non-verbally at the level of a 5 year-old. Non-verbal skills include an individual's ability to learn, internalize, and apply information and well as the ability to exercise good judgment. Appellant would require oversight and assistance in order to raise B.M. Appellant had previously been diagnosed bi-polar and exhibited mood deregulation. Dr. Thomas had completed two prior evaluations of appellant and the results of the instant evaluation were consistent with the first two.

{¶ 13} Despite being aided due to her limitations, appellant completed only 5 of 12 goals at Goodwill Parenting classes. Appellant was unable to retain and apply what she learned during her classes during visitations with B.M. Providers at Goodwill had concerns about appellant's ability to parent independently and did not recommend reunification with B.M, nor even unsupervised visitation.

{¶ 14} Appellant failed to follow through with comprehensive mental health treatment, had multiple residences throughout the pendency of the case, and her home at the time of trial was unsafe for B.M. She had a new boyfriend with a criminal record. At the start of the case, drugs were not a concern, however, appellant tested positive for marijuana and cocaine in November 2017, and tested positive for marijuana through the conclusion of the case. At trial, she admitted to ongoing marijuana use.

{¶ 15} Kelly Williams was appellant's ongoing caseworker. She testified that appellant had been involved with SCJFS on two other occasions with two other children. In those cases, appellant failed to successfully complete services, lost custody, and the children were placed with other parties. She further testified that B.M was born with several medical issues including acid reflux and eczema, and developmentally delays.

B.M has been in a foster placement since birth. All of his medical needs are being met by his foster parents and he is receiving intervention services for his developmental delays. B.M is bonded with his foster parents and they have expressed and desire to adopt B.M.

{¶ 16} Based on her observations, Williams testified the benefit of granting permanent custody to SCJFS outweighed any possible harm of separating B.M from appellant, and further, was in B.M's best interest. Debra Shriver, the Guardian ad Litem appointed to B.M echoed Williams' recommendation.

{¶ 17} On April 10, 2018, the trial court issued findings of fact and conclusions of law denying appellant's motion for extension of temporary custody and further finding in spite of the efforts by SCJFS, appellant failed to remedy the conditions that caused B.M to be placed with SCJFS, and that B.M cannot and should not be placed with appellant. The court therefore found it was in the best interest of B.M to grant permanent custody to SCJFS and terminated appellant's parental rights.

{¶ 18} Appellant subsequently filed an appeal and the matter is now before this court for consideration. Appellant raises two assignments of error:

I

{¶ 19} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 20} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 21} We address appellant's assignments of error together. In her first assignment of error appellant argues SCDJFS failed to show by clear and convincing evidence that permanent custody was appropriate and that the trial court's award of permanent custody to SCDJFS was against the manifest weight of the evidence. In her second assignment of error, appellant argues SCDJFS failed to show by clear and convincing evidence that the award of permanent custody was within B.M's best interest, and the trial court's finding that it was is against the manifest weight of the evidence. We disagree.

{¶ 22} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the

evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

## Permanent Custody

{¶ 23} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 215.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned* * *and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for

twelve or more months of a consecutive twenty-two-month period* *

*.

(e) The child or another child in the custody of the parent or parents

from whose custody the child has been removed has been

adjudicated an abused, neglected, or dependent child on three

separate occasions by any court in this state or another state.

{¶ 24} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 25} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents pursuant to R.C. 2151.414(B)(1)(a), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E) including in relevant part:

(1) Following the placement of the child outside the child's home and

notwithstanding reasonable case planning and diligent efforts by the

agency to assist the parents to remedy the problems that initially

caused the child to be placed outside the home, the parent has failed

continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

Best Interests

{¶ 26} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415

of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section

apply in relation to the parents and child.

{¶ 27} Appellant points out that she substantially complied with her case plan services. Even so, this court has previously recognized, "that even where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement." *Matter of L.D.* 5th Dist. Licking No. 18 CA 0023, 2018-Ohio-3380 ¶ 34, citing *In re Pendziwiatr/Hannah Children*, 5th Dist. Tuscarawas App. No. 2007 AP 03 0025, 2007-Ohio-3802, ¶ 27.

{¶ 28} This is one such case. As set forth in our statement of facts, this is appellant's third involvement with SCJFS and the third child removed from her custody. T(I) 17. Unfortunately, due to intellectual disability appellant simply cannot parent independently and has no support system. Appellant admitted to such at trial. T(I) 105-106. Because appellant's challenges prevent her from applying what she had been taught and from making sound decisions, she was unable to remedy the issues which caused the removal of B.M. T(I) 52-53, 72-73, 80-81. In fact, matters became worse instead of better during the pendency of this matter when appellant began using drugs. Appellant's drug use further impacts her already impaired ability to make sound judgments. T(I) 49-50. At the time of trial, appellant had moved into a filthy, unsafe home with a man possessing a criminal history and at who was under investigation for abusing 2 different children. T(I) 12, 20-24.

{¶ 29} During visits with B.M, appellant required direction and could not apply what she had learned in her Goodwill parenting classes. T(I) 76-79. Providers with Goodwill Parenting could not recommend reunification or even unsupervised visits. T(I) 81. B.M had been with his foster family since birth and demonstrated a bond with them that did not exist with appellant. B.M's medical and developmental needs were being addressed by his foster family and they expressed a desire to adopt B.M. T(II) 7-11,15-17

{¶ 30} Based on the foregoing, we reject appellant's arguments. SCJFS presented ample evidence to demonstrate by clear and convincing evidence that B.M cannot and should not be placed with appellant, and further that it was within B.M's best interest to grant the agency permanent custody.  The trial court's finding of the same, therefore, was not against the manifest weight of the evidence.

{¶ 31} Appellant's first and second assignments of error are overruled.

{¶ 32} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Hoffman, J. concur.

EEW/rw