[Cite as *In re G.M.*, 2023-Ohio-3461.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. John W. Wise, P.J.<br>Hon. Patricia A. Delaney, J. |
| G.M. | Hon. Craig R. Baldwin, J. |
| MINOR CHILD | Case No. 2023 CA 00060 |
|  | O P I N I O N |

|  |  |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2022 JCV 00619 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 27, 2023 |

APPEARANCES:

For Appellee

BRANDON J. WALTENBAUGH
SCDJFS
402 2nd Street, SE
Canton, Ohio  44702

Guardian ad Litem

ML SEKULA
122 Central Plaza North
Canton, Ohio  44702

For Appellant Mother

KATHALEEN S. O'BRIEN
116 Cleveland Avenue, NW
Suite 303
Canton, Ohio  44702

For Father

RALPH LACKI
4608 Castlebar Street, NW
Canton, Ohio  44708

*Wise, P. J.*

{¶1}    Appellant, C.M., appeals the decision of the Stark County Court of Common Pleas, Family Court Division, which terminated Appellant's parental rights and granted Stark County Department of Job and Family Services' ("Agency") motion for permanent custody of G.M. The following facts give rise to this appeal.

### FACTS AND PROCEDURAL HISTORY

{¶2}    G.M. was born on July 4, 2020. Appellant is the biological mother of G.M. J.M. is the biological father ("Father").

{¶3}    On March 7, 2022, the Agency filed a complaint alleging dependency and neglect and seeking temporary custody of G.M. based upon the homicide of G.M.'s older sibling by J.M., Appellant's continued relationship with J.M. after the homicide, Appellant's use of drugs and alcohol, the condition of the home, and Appellant's noncompliance with a safety plan. The trial court held an emergency shelter care hearing and found that probable cause existed for the involvement of the Agency, that the Agency engaged in reasonable efforts to prevent the removal of the child, the continued residence of the child with Appellant was contrary to G.M.'s best interest, and granted temporary custody of G.M. to the Agency.

{¶4}    On June 1, 2022, the Agency dismissed the original complaint due to statutory time constraints and refiled a complaint alleging dependency and neglect and seeking temporary custody of G.M. based upon similar grounds as the March 7, 2022 complaint. Later that day, the trial court held an emergency shelter care hearing and found that probable cause existed for the involvement of the Agency, that continued residence of the child with Appellant was contrary to G.M.'s best interest, that the agency made

intensive efforts to identify and engage family members to take custody of G.M., and continued temporary custody of the Agency.

{¶5} On June 29, 2022, the trial court found G.M. to be dependent and placed G.M. into the temporary custody of the Agency. The trial court approved the case plan and found that the Agency engaged in reasonable efforts to prevent the need for the removal of G.M., that continued residence of G.M. with Appellant is contrary to his best interest, and that the Agency made intensive efforts to find family members to become caregivers to G.M.

{¶6} On January 4, 2023, the Agency filed a motion seeking permanent custody of G.M. The trial court set a hearing for the motion for permanent custody for February 22, 2023.

{¶7} On February 17, 2023, Appellant filed a Motion to Grant an Extension of Time or in the Alternative a Change of Legal Custody.

{¶8} On February 22, 2023, the trial court continued all pending motions to May 16, 2023.

{¶9} On April 28, 2023, the Guardian ad Litem for G.M. filed a report.

{¶10} On May 16, 2023, and May 19, 2023, the trial court held a hearing regarding the permanent custody of G.M.

{¶11} At the hearing Dr. Amie Thomas testified that she evaluated Appellant, who exhibits symptoms of post-traumatic stress disorder related to the death of a child. She has a strong family history of bipolar disorder and describes symptoms consistent with that disorder. While Appellant expressed a willingness to commit to participating in psychiatric and counseling services, she failed to follow through with her expressed

intentions. Dr. Thomas recommended that Appellant participate in mental health treatment services tailored to trauma, psychiatric evaluation, to refrain from taking medical marijuana to treat those diagnoses, participate in substance abuse treatment services, and Goodwill Parenting classes.

{¶12} Next, Charlee Davenport testified that she is the caseworker assigned to this case. Appellant is the mother of G.M. and J.M. is the father. The hospitalization of G.M.'s sibling for a subdural brain bleed and broken ribs led to the Agency opening the case. G.M.'s sibling later passed. The cause of death was ruled to be non-accidental trauma. Pursuant to a safety plan, G.M. was placed in the home of G.M.'s great-grandmother and grandmother.

{¶13} The terms of the custody provided that Appellant was not to have any contact with J.M., no unsupervised visitation with G.M., complete an assessment, counseling for substance abuse, and mental health.

{¶14} The terms of the custody were violated by Appellant having unsupervised visits with G.M. while at her grandmother's home. Also, while living in grandmother's home, G.M. ingested Suboxone. G.M. had to be given Narcan and taken to the hospital. The Agency then took custody pursuant to Juv.R. 6.

{¶15} The Agency then looked for other suitable relatives to place G.M. with but could not find any. Appellant urged them to place G.M. with Rashonda Reed, a childhood friend. Ms. Reed did not have an extensive relationship with G.M. but knew G.M.'s great-grandmother, whose residence at which G.M. ingested Suboxone. Ms. Davenport was concerned with G.M.'s familiarity of Ms. Reed. G.M. was already in a safe foster home

when Appellant put Ms. Reed's name forward, and the Agency did not think it was in G.M.'s best interest to move G.M. a third time in such a short time period.

**{¶16}** From September 2021 to March 2022, the Agency worked with Appellant on the completion of a case plan. The case plan consisted of successfully completing parenting assessment, psychiatric evaluation, Goodwill Parenting courses, substance abuse and mental health assessments, and drugs screens.

**{¶17}** Appellant completed the parenting assessment which recommended counseling for substance abuse and mental health. Appellant initially did not engage in substance abuse treatment but started a couple months into the case plan. Appellant tested positive for marijuana during her case plan and tested positive for cocaine on April 20, 2023. Due to her positive tests for controlled substances, she was not admitted into Goodwill Parenting classes. Appellant failed to recognize the threat J.M. posed to G.M. even after his conviction of Involuntary Manslaughter of G.M.'s sibling. Ms. Davenport agrees that Appellant has failed to complete the case plan.

**{¶18}** Appellant consistently made her visitation appointments with G.M. throughout the case plan. During these visits Ms. Davenport made the observation that Appellant acts more like a friend to G.M. than a parent. During Christmas she would get carried away playing with the gifts, not realizing G.M. had moved onto something else.

**{¶19}** Even though Appellant has made some progress, Ms. Davenport does not believe Appellant could provide an adequate permanent home for G.M. at this time, the conditions that caused G.M. to be placed outside the home have not been remedied, she tested positive for cocaine at the beginning of the case and as recently as April of 2023. She believes the Agency has made reasonable efforts to reunify Appellant and the child.

{¶20} G.M. has been placed with a foster family. G.M. is very bonded to that family. He calls the foster parents, "mom" and "dad," he does well with their two dogs, and calls the family's baby, his "brother." He engages well with both parents. The foster parents have an appropriate home and are interested in adopting G.M.

{¶21} J.M. has not had an opportunity to participate in the case plan as he was living in North Carolina at the beginning of the case. J.M. missed his first scheduled visit with G.M. because U.S. Marshalls arrested J.M. for felonious assault, endangering a child, and the murder of G.M.'s sibling. J.M. entered a plea of guilty to involuntary manslaughter. J.M. has had no visits with G.M. J.M. received a prison sentence of seven to ten years so is unavailable to provide care to G.M. Ms. Davenport believes J.M. has abandoned G.M.

{¶22} Next, Ms. Reed testified that she is a friend of Appellant and godmother to G.M. Ms. Reed has been a foster parent before without any issue and is aware how the system works. She was still willing to take custody of G.M. at the time of the hearing.

{¶23} Next, Attorney Sekula testified she is the Guardian ad Litem for G.M. She believes granting permanent custody to the Agency is in the best interest of the child. G.M.'s sibling died of acute subdural hematoma, hemorrhage, cerebral edema, bilateral hemorrhages of the retinal optic nerve, and vocal hemorrhage caused by J.M. Appellant has wavered on whether she believes J.M. did this intentionally. Evidence showed G.M.'s sibling had suffered abuse of a period of time while in Appellant's care.

{¶24} G.M. is extremely bonded to the foster parents. G.M. is very protective and watches over the new baby whom he calls his brother. Attorney Sekula is worried about G.M.'s safety should he return to Appellant's care, as he is too young to protect himself.

Appellant has tested positive multiple times for THC and twice for cocaine. Early on she missed many drug tests.

{¶25} On May 30, 2023, the trial court granted the Agency permanent custody of G.M., denying Appellant's motions to Change Legal Custody and Extend Temporary Custody and terminated Appellant's parental rights.

**ASSIGNMENTS OF ERROR**

{¶26} Thereafter, Appellant timely filed her notice of appeal. She raises the following two Assignments of Error:

{¶27} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY OF MINOR CHILD AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶28} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I., II.**

{¶29} In Appellant's first and second Assignments of Error, Appellant argues the trial court erred in granting permanent custody to the Agency because the Agency failed to show grounds existed for permanent custody, that the award of permanent custody

was within G.M.'s best interest, and the trial court's finding was against the manifest weight of the evidence. We disagree.

**{¶30}** As to our standard of review, generally we review the trial court's decision in this context for abuse of discretion. We would examine the entire record and determine whether there is sufficient competent credible evidence to support the judgment rendered by the trial court. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). The trial court must resolve disputed issues of fact and weigh the testimony and credibility of the witnesses. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). We would defer to the trial court's discretion because the trial court had the opportunity to observe the witnesses and parties in weighing the credibility of the proffered testimony in a way a reviewing court cannot. Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶31}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990) quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

**{¶32}** An award of permanent custody must be based upon clear and convincing evidence. R.C. §2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**{¶33}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶34}** Following the hearing, R.C. §2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

> (a)     The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one

or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

      (b)    the child is abandoned;

      (c)    the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

      (d)    the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶35}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(A) through (d) is present before proceeding to a determination regarding

the best interest of the child. The statutory best interest test is set out in R.C. §2151.414(D)(1):

In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶36} Appellant argues that she substantially complied with her case plan. Even if this is true, this Court has previously recognized, "that even where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement." *Matter of L.D.*, 5th Dist. Licking No. 18 CA 0023, 2018-Ohio-3380, ¶34, citing *In re Pendziwiatr/Hannah Children*, 5th Dist. Tuscarawas App. No. 2007 AP 03 0025, 2007-Ohio-3802, ¶27.

{¶37} Appellant claims that she has substantially complied with her case plan including maintaining her sobriety. However, evidence presented at trial has showed the contrary. Appellant did complete parenting assessment, made herself and home available, created a case plan and participated in a family meeting. However, Appellant missed several drug screens, tested positive for THC on multiple occasions and positive for cocaine twice. Appellant was unable to take parenting classes due to her continued drug use. Appellant failed to complete a psychiatric evaluation and substance abuse treatment.

{¶38} Ms. Davenport testified that concerns remain about Appellant's ability to protect G.M. Appellant continued a relationship with J.M. even after the death of G.M.'s brother caused by J.M. Appellant's relationship with G.M. is more like a friend than a

parent. Ms. Davenport noted Appellant did not start any significant work on the case plan until after the Agency filed the motion for permanent custody. Ultimately, Appellant is not able to provide an adequate home for the child, and the issues leading to the removal of the child from Appellant's home have not been remedied. She also noted G.M. ingested drugs in Appellant's grandmother's care leading to G.M.'s hospitalization.

**{¶39}** Ms. Davenport also testified that G.M. is healthy with no medical, developmental or behavioral concerns with the foster family. G.M. has bonded well with the foster parents, calling them mom and dad. He calls their new baby his brother. The foster family's home is appropriate, they are able to care for G.M.'s needs, and they are interested in adopting G.M.

**{¶40}** Dr. Thomas testified that Appellant's family history of bi-polar disorder and her post-traumatic stress disorder is concerning as she does not follow through on counseling. Dr. Thomas also recommended Appellant not use medical marijuana due to her substance abuse issues.

**{¶41}** The Guardian ad Litem testified she is worried about the level of abuse G.M.'s sibling suffered while in Appellant's care and Appellant's ability to keep G.M. safe. The Guardian ad Litem also has concerns over Appellant's ability to parent based on observing Appellant's visitations.

**{¶42}** Based on the foregoing, we find the Agency presented sufficient evidence to demonstrate by clear and convincing evidence that G.M. cannot and should not be placed with Appellant, and that it is in G.M.'s best interest to grant the Agency permanent custody.

{¶43} Accordingly, Appellant's first and second Assignments of Error are overruled.

{¶44} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Court Division of Stark County, Ohio, is hereby affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/br 0925